U.S. DISTRICT COURT
DISTRICT OF MINNESOTA

Jill Kahring,

      Plaintiff,

vs.

Dominium Management Services, LLC and
St. Paul Leased Housing Associates VIII, LLLP,

      Defendants.

Civil Case No.:

**COMPLAINT**

Plaintiff Jill Kahring ("Plaintiff"), as and for her Complaint against Defendants, states and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff, a person with a severe disability who is confined to a wheelchair, was induced to lease an apartment in reliance on representations made by Defendants that the apartment was an accessible apartment.

2. Although there is no dispute that Defendants' representations were false, Defendants have refused to take the actions necessary to make the Apartment accessible and safe for the Plaintiff to occupy – instead taking the absurd and unlawful position that it is Plaintiff's responsibility to pay the associated costs.

3. As a result, to this day, well over a year since Plaintiff's scheduled date of occupancy, Plaintiff remains unable to move into the apartment she was induced to lease because it remains un-accessible and unsafe.

1

4. Plaintiff has and continues to sustain substantial damages as a result of Defendants' conduct.

## PARTIES

5. Plaintiff is a resident of Ramsey County, Minnesota. Plaintiff is a person with a severe disability who is confined to a wheelchair.

6. Defendant Dominium Management Services, LLC is a Minnesota Limited Liability Company, with Registered Office Address of 2905 Northwest Blvd., #150 Plymouth, MN 55441.

7. Defendant St. Paul Leased Housing Associates VIII, LLLP is a Minnesota Limited Liability Partnership with Registered Office Address of 2905 Northwest Blvd., #150 Plymouth, MN 55441.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

9. This Court has jurisdiction over the remainder of Plaintiff's claims pursuant to 28 U.S.C. § 1367.

10. Venue in this Court is proper under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

11. Plaintiff is confined to, and completely dependent upon, use of a wheelchair.

12. Plaintiff needs accessible housing.

2

13. Defendant Dominium Management Services, LLC (Dominium) holds itself out as a leading apartment owner, developer and manager.

14. According to Dominium, "Union Flats" is a "217-unit affordable housing development in St. Paul, Minn." Union Flats is "Section 42 Tax Credit property." Section 42 of the Internal Revenue Code encourages developers to build affordable housing by providing federal income tax credits. As a condition for receiving these tax credits, the developers must keep the housing affordable.

15. Dominium has described Union Flats as offering "reimagined one, two and three-bedroom apartments. The apartment homes feature high-efficiency appliances, including brand-new in home washers and dryers. Units also feature private balconies and patios, high ceilings, and exposed ductwork. The state-of-the-art community amenities at Union Flats include a public pavilion, a courtyard, a playground, a bike café, a yoga studio, a grill space, a pool, a clubhouse, and a fitness center. Additional amenities include storage lockers and underground and surface parking."

16. In 2018, Plaintiff inquired of Dominium regarding the lease of a handicap accessible apartment unit at "Union Flats." At that time, and at all times material hereto, Dominion was aware of Plaintiff's disability; that she was confined to, and completely dependent upon, use of a wheelchair; and that Plaintiff needs accessible housing.

17. At the time of Plaintiff's 2018 inquiry, construction of Union Flats had not been completed. Union Flats was slated to open in 2019.

18. In response to Plaintiff's 2018 inquiry, Plaintiff received an email dated September 26, 2018 sent from the following email address: union.flats@dominiuminc.com. The email represented to Plaintiff that Union Flats would have a number of accessible units, including apartment 324 (2C) and closed with the salutation "Best Regards, Union Flats Dominium."

19. On October 10, 2018, Plaintiff had the following email exchange with union.flats@dominiuminc.com:

> Hi Jessica, I have a question regarding the layout of the washer and dryers in the apartment. I filled out an application for apartment 324 and want to know if the washer and dryer will be side by side or if they are stacked on top of each other. It was difficult to tell from the floor plan on-line. Thank you. Jill Kahring.
>
> Hi Jill, Floorplan 2c will have a stacked washer and dryer. Let us know if you have additional questions! Best Regards, Jessica
>
> Hi Jessica: I am in a wheelchair and was informed that the 2C rooms would be accessible. Meaning I can't access the stack-able machines. Can you please advise which apartments would have the side by side machines? Thank you. Jill Kahring.
>
> [Jill] Only the 2c-Type A floorplans will have a side by side washer and dryer. I did look on the floorplan of the building of each home, and unit 324 is a 2C-Type A floorplan. Therefore, it will have a washer and dryer side-by-side, Jill.
>
> [Jessica] Thank you very much for checking. Jill Kahring.

20. In January of 2019, Plaintiff had additional exchanges with union.flats@dominiuminc.com regarding questions pertaining to the toilet height, accessible shower, and carpeting in the apartment.

21. Plaintiff was induced to enter into a lease agreement based upon representations made to her by Defendants.

4

22. The representations made by Defendant and which induced Plaintiff to enter into a lease agreement included, but are not necessarily limited to, those herein described, that the apartment Plaintiff was agreeing to lease at the Union Flats development was an accessible apartment.

23. In reliance on Defendants representations, Plaintiff executed a "Union Flats Lease Agreement" on June 11, 2019 (the Union Flats Lease Agreement). Although the lease agreement was entitled "Union Flats Lease Agreement," the document identified the "Owner" to be St. Paul Leased Housing Associates VIII, LLLP.

24. Among other things, the Union Flats Lease Agreement provided for a Move-In Inspection. But at the time Plaintiff was induced to execute the Union Flats Lease Agreement, the apartment unit Plaintiff was to occupy (787 Hampden Ave., Apt. 324, St. Paul, MN 55114) (the Apartment) had not yet been fully constructed and was not made available for Plaintiff to inspect.

25. Plaintiff had to enter into the Union Flats Lease Agreement sight-unseen and pay the first rental check in sole reliance on Defendant's representations as to the Apartment and before she was permitted to see it.

26. June 22, 2019 was Plaintiff's first opportunity to inspect the Apartment. On that date, Plaintiff, her personal care assistant (PCA), and a Union Flats representative Jessica were all present. Upon inspecting the Apartment, Plaintiff and her PCA immediately discovered that, contrary to the representations that had been made to Plaintiff

5

by Defendants, the Apartment was not accessible. During the course of the inspection, Plaintiff and her PCA identified to Jessica a host of issues which presented significant safety related concerns for her and which prevented Plaintiff from moving into the Apartment.

27. Following the June 22, 2019 inspection, Jessica prepared and sent an email from union.flats@dominiuminc.com to Courtney.Urman@dominiuminc.com and Patrick.Rewerts@dominiuminc.com. The email, sent on June 22, 2019, provided:

> I wanted to let you guys know that #324 Jill Kahring did not move in today. So here is my list of why's [sic]:
>
> 1. Jill needs the entry door to be adjusted where it is not so heavy for her to push or pull. 2. Entry closet/hallway closet – She does not have access to it. Door clearance is too narrowed. 3. Living room Blinds – She needs a longer wand. 4. Fridge and stove not leveled. She said they look slanted. 5. Master bedroom closet – the clearance is 26". She cannot get into her closets. 6. Master bedroom screen to the patio - we were not able to open. 7. Master bedroom bath - toilet is 22" from the toilet seat to the floor. She needs a toilet that is 19". 8. Master bedroom bath – She needs a shower that does not have a seating area already installed. 9. She has questions about the dryer vent? She said that there is no dryer vent.... 10. There is lots of marks on the walls throughout the apartment, we need to touch up paint. 11. She wants instructions of how to use the handicap accessible chair in the pool – not sure what you call it.. sorry but you get the point ;) 12. Jill wants to know how heat resistant is the countertops?????????? Not related to maintenance: 13. Storage Unit 32 which is the next available one – she has a hard time accessing it. She wants to know if she can get assigned to one that is straight forward from the entrance door? Such as 37 or 38. 14. Underground parking space #121 is marked on our spreadsheet has a Handicap accessible parking but it is not. Space 118 and 120 are but they are already assigned to someone else.
>
> Courtney can you give Jill an update about all of the 14 items I listed?
>
> Thanks,
>
> Jessica

28. On June 24, 2019, Courtney.Urman@dominiuminc.com sent an email to Plaintiff stating, among other things, as follows:

Hi Jill,

Thank you for giving us such comprehensive feedback on your apartment! I'm glad to have the opportunity to make this apartment home work for you; renting an apartment sight-unseen carries some risk but I know that by the time we're done, it will meet your needs.

29. Although Defendants, including specifically Courtney Urman, repeatedly assured Plaintiff that the issues precluding her ability to safely occupy the Apartment would be satisfactorily addressed, they were not.

30. On December 20, 2019 Plaintiff, by and through her undersigned counsel, advised Defendants that despite Ms. Kahring's efforts and communication, the Apartment still was not in a condition permitting Ms. Kahring to inhabit it safely. The letter sought to prompt Defendants to resolve the issues at the Apartment without having to resort to litigation. The letter advised Defendants that, as a result, despite the passage of more than five months since the Union Flat's Lease Agreement was executed, Ms. Kahring remained unable to move into the Apartment, causing her to have to continue to pay not only for the rent of the Unit, but at the same time continue to pay for the rent of her present residence.

31. Plaintiff's December 20, 2019 letter advised Defendants further that:

- The front door to the unit is not accessible because the door closing speed is too fast, in violation of the 2010 ADA Standards (hereinafter the Standards or Standard), Standard 404.2.8;

- The front door peep-hole is too high in violation of Standards 309, 308, 404.2.7. See also Advisory 809.5.5.2;

7

- There is no accessible bathroom in the unit. In order to be accessible, bathrooms must have, among other things: adequate maneuvering clearance as required by the Standards 603.2.3, 604.3.1, and 604.8.1.1; a toilet with rear and side grab bars as required by Standards 604.5.1 and 604.5.2; a toilet with a flush control that is on the open side of the water closet as required by Standard 604.6; a toilet paper dispenser that is located no less than 7 inches and no greater than 9 inches from the front of the toilet to the centerline of the dispenser and no less than 15 inches and no greater than 48 inches above the floor in as required by Standard 604.7; bathtub grab bars complying with Standard 607.4; a bathtub wall that can accommodate a removable in-tub seat with that is no more than 19 inches above the bathroom floor as required by Standard 610.02; shower compartment grab bars complying with Standard 608.3; an accessible sink with adequate clear knee and toe clearance complying with Standards 306.2 and 306.3; and sinks with the front of the higher of the rim or counter no higher than 34 inches above the floor as required by Standard 606.3;

- The Unit lacks accessible doorways. In order to be accessible, doorways must comply with Standard 404. Standard 404.2.3 requires door openings with a clear width of at least 32 inches, measured to the door face with the door at 90 degrees. The doorways to the pantry closet and master bedroom closet are too narrow. Standard 404.2.4.1 requires that doors with a latch approach to the pull side of a door must have at least 48 inches of maneuvering clearance perpendicular from the doorway threshold. The guest bedroom only has approximately 40 inches of clearance;

- The Unit lacks an accessible route to the unit's balcony because the threshold of the balcony door has vertical changes in level in excess of ¼ of an inch, in violation of the Standard 303;

- The Unit does not have an accessible kitchen sink. Standard 804.4 requires that sinks comply with standard 606. Standard 606.2 does not permit a parallel approach to a kitchen sink in a space where a cook top or conventional range is provided. Standard 606.2 thus requires clear floor space for a forward approach to the sink in the Unit complying with the knee and toe clearance requirements of 306;

- The Unit window and vent fan controls are too high in violation of Standard 309; and

- The common area doors close too fast in violation of Standard 404.2.8.

32. While some may view these issues as unimportant, they are critical to people with mobility disabilities like Plaintiff.

33. To date, the Apartment is still not accessible and Plaintiff remains unable to occupy it.

## COUNT I
## **FEDERAL REHABILITATION ACT**

34. Plaintiff restates and re-alleges the preceding paragraphs as if fully set forth herein.

35. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that no otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

36. Plaintiff is confined to and dependent upon use of a wheelchair for mobility and is therefore an individual with a disability for purposes of the Rehabilitation Act.

37. Defendants' Union Flats development is a "Section 42 Tax Credit property." Section 42 of the Internal Revenue Code encourages developers to build affordable housing by providing federal income tax credits. As a condition for receiving these tax credits, the developers must keep the housing affordable. These tax credits are federal financial assistance and subject Defendants to the Rehabilitation Act.

38. The Rehabilitation Act incorporates standards from the ADA and Title VII. See e.g., *Lane v. Pena*, 518 U.S. 187, 193 (1996) (The Rehabilitation Act provides that remedies, procedures, and rights set forth in Title VII apply to violations of section 501 of the Rehabilitation Act (29 U.S.C. § 791), which prohibits disability discrimination in employment decisions by the federal government); *Ballard v. Rubin*, 284 F.3d 957, 960 n.3 (8 Cir. 2002) (because same basic standards and definitions are used under the ADA and Rehabilitation Act, cases interpreting either act are interchangeable); *Gardner v. Morris*, 752 F.2d 1271, 1278 (8 Cir. 1985) (the 1978 amendments to the Rehabilitation Act incorporated by reference provisions of Title VII that require claimant to exhaust administrative remedies before filing discrimination claim in court); 42 U.S.C. § 12117(b) (enforcement agencies for employment discrimination claims under the ADA and Rehabilitation Act shall develop procedures to avoid duplication of effort and conflicting or inconsistent standards); 29 U.S.C. §§ 791(g) & 794(d) (standards to be applied in cases alleging employment discrimination under various portions of Rehabilitation Act shall be those in ADA); 29 C.F.R. § 1614.203 (standards to be used to determine violation of Rehabilitation Act, 29 U.S.C. § 791, are those applied under ADA).

39. As set forth above, the Apartment is not accessible, is not in compliance with the ADA Standards of Accessibility, and Plaintiff has been and continues to be denied the ability to occupy the Apartment on the basis of her disability, all in violation of the Rehabilitation Act.

40. As a result of the Defendants' actions, Plaintiff has suffered and will continue to suffer harm.

## COUNT II
## DECEPTIVE PRACTICE AND VIOLATION OF MINNESOTA CONSUMER FRAUD ACT

41. Plaintiff restates and re-alleges the preceding paragraphs as if fully set forth herein.

42. Defendants failed to provide an apartment that was safe and accessible to Plaintiff.

43. Defendants failed to provide an apartment that was accessible.

44. The Apartment does not comply with applicable safety codes, including but not limited to the ADA, the Minnesota Accessibility Code, and the International Building Code.

45. Defendants have failed to fulfill promises made to Plaintiff to make the apartment accessible and that she would have an equal opportunity to use and enjoy it.

46. The Defendants' misrepresentations and omissions misled Plaintiff for the purpose of inducing Plaintiff to enter into the Lease Agreement.

47. The Defendants' misrepresentations, omissions, and other conduct described herein was deceptive and otherwise in violation to the Minnesota Consumer Fraud Act, Minn. Stat. §325F.68 et. seq. and the provisions of Minn. Stat. § 8.31.

48. As a direct result of the Defendants' violation of these statutes, Plaintiffs have been damaged.

49. As a further direct result of Defendants violation of these statutes, Plaintiff is entitled to recover her attorney's fees, costs of investigation and other costs and disbursements from the Defendants.

## COUNT III
## FRAUD

50. Plaintiff restates and re-alleges the preceding paragraphs as if fully set forth herein.

51. Defendants' representation that the Apartment was an accessible apartment was false; was made with knowledge of its falsity or made as of the Defendants' knowledge without knowing whether it was true or false; was made with the intention to and did induce Plaintiff's reliance thereon; and caused Plaintiff to suffer pecuniary damage.

## COUNT IV
## BREACH OF CONTRACT

52. Plaintiff restates and re-alleges the preceding paragraphs as if fully set forth herein.

53. The Lease Agreement provides, among other things, that Plaintiff "shall not be responsible for payment of rent until the Apartment is available to resident." Lease Agreement, at paragraph 36.

54. The Apartment remains unavailable to Plaintiff to date because it is not accessible.

55. Defendants' conduct and breach of contract, has resulted to damages to the Plaintiff in an amount of excess of $50,000.

## COUNT V
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

56. Plaintiff restates and re-alleges the preceding paragraphs as if fully set forth herein.

57. Defendants' conduct constitutes a breach of the duty of good faith and fair dealing implicit in the Lease Agreement.

## COUNT VI
## PROMISORY ESTOPPEL

58. Plaintiff restates and re-alleges the preceding paragraphs as if fully set forth herein.

59. Defendants' made clear and definite promises to the Plaintiff that the Apartment she was leasing would be accessible and that she would have an equal opportunity to use and enjoy it.

60. It was reasonably foreseeable to Defendants that the Plaintiff would rely on these promises.

61. Plaintiff did rely on Defendants' promises, above-described, and has sustained substantial losses and damages as a result of that reliance.

## COUNT VII
## MISPREPRESENTATION AND NEGLIGENCE

62. Plaintiff restates and re-alleges the preceding paragraphs as if fully set forth herein.

63. Defendants' misrepresentations, omissions, and failures to disclose information were made either in bad faith or, alternatively, were negligent.

64. As a direct and proximate result of the omissions and failures of Defendants, Plaintiff has sustained damages.

## COUNT VIII
## UNJUST ENRICHMENT

65. Plaintiff restates and re-alleges the preceding paragraphs as if fully set forth herein.

66. Defendants will be unjustly enriched in the event they do not compensate Plaintiff for the damages and expenses she has incurred because the Apartment was not and remains un-accessible and unsafe for her to move into.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendants and award the following relief:

1. Judgment against Defendants in an amount to be determined at trial, together with Plaintiff's costs and disbursements incurred herein;

2. Appropriate injunctive relief, including but not limited to a permanent injunction which directs Defendants to take all steps necessary to bring the Apartment into full compliance with the requirements of applicable law such that it is safely and independently accessible to Plaintiff and prohibiting Defendants from engaging in further discriminatory conduct of the types alleged in this Complaint;

3. Compensatory and consequential damages, including for emotional distress against defendants;

4. Pre-judgment and post-judgment interest at the highest lawful rate;

5. Attorneys' fees and costs of this action; and

6. Any such further relief as the Court deems appropriate.

Dated: January 8, 2020            **THRONDSET MICHENFELDER, LLC**

By: _____
  Patrick W. Michenfelder (#024207X)
  Cornerstone Building
  One Central Avenue West, Suite 101
  St. Michael, MN 55376
  Tel: (763) 515-6110
  Fax: (763) 226-2515
  Email: pat@throndsetlaw.com
  *Attorneys for Plaintiff*

The undersigned hereby acknowledges that costs, disbursement, and reasonable attorney fees may be awarded to the opposing party or parties pursuant to Minn. Stat. § 549.221

_____
Patrick W. Michenfelder